UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ST. CYR, et al.,

    Plaintiffs,
vs.
                                          Case No.   3:06-cv-13-J-33TEM

FLYING J INC.,

    Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant's Amended Motion to Dismiss Counts III, IV, VII, and VIII of Plaintiffs' Second Amended Complaint and Incorporated Memorandum of Law (Doc. # 16-1), which was filed on April 27, 2006.  Plaintiffs responded in opposition to the motion to dismiss on May 22, 2006 (Doc # 20).

Having carefully considered the submissions of the parties and the wealth of case law addressing the issues presented, the Court determines that Defendant's motion to dismiss should be **GRANTED**.

**I.**    **FACTUAL BACKGROUND**

Plaintiffs Lise and Jacques St. Cyr state in their Amended Complaint that on November 20, 2003, they were business invitees at Defendant Flying J's propane filling station located in St. Johns County, Florida.  (Doc. # 14 at ¶ 5.)  Plaintiffs contend that Defendant refilled their propane tank in a defective and

-1-

unreasonably dangerous manner.  (Doc. # 20 at ¶ 3.)  Plaintiffs submit that Defendant's actions caused an explosion and flash-fire resulting in personal injury and property damage.  (Doc. # 20 at ¶¶ 2-3.)  Consequently, Plaintiffs allege that Defendant's actions have caused them physical injury, pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical nursing care and treatment, loss of earnings, and loss of ability to earn money.  (Doc. # 14 at ¶ 9.)[1] Additionally, Plaintiffs allege that Defendant's actions have caused property damage to their vehicle/camper.  (Doc. # 14 at ¶ 15.)

Plaintiffs filed their Amended Complaint on April 18, 2006, asserting nine counts.[2]  (Doc. # 14.)  Defendant moves to dismiss counts III, IV, VII, and VIII of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted.

## II.  LEGAL STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the facts of the complaint as

---

[1] Plaintiffs, in their Amended Complaint, allege that these losses are either permanent or continuing and will be suffered sometime into the future.  (Doc. # 14 at ¶ 9.)

[2] Counts I and II allege negligence; Counts III and IV allege strict liability; Counts V and IV allege res ipsa loquitur; Counts VII and VIII allege negligence per se; and Count IX alleges loss of consortium.

true and views them in the light most favorable to the non-moving party. See Magluta v. Samples, 375 F.3d 1269, 1273 (11th Cir. 2004)(citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Marsh v. Butler County Comm'n, 268 F.3d 1014, 1022 (11th Cir. 2001)(en banc)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

The plaintiff is not required by the Federal Rules of Civil Procedure to "set out in detail the facts upon which he bases his claim." Conley, 355 U.S. at 47. All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must be sufficient to afford the defendant "fair notice of what the claim is and the grounds upon which it rests." United States v. Baxter Int'l, Inc., 345 F.3d 866, 881 (11th Cir. 2003)(quoting Conley, 355 U.S. at 47). Thus, the issue in a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss is not whether the plaintiff will ultimately prevail on his or her claim, but rather, whether the allegations contained in the complaint will be sufficient to allow discovery as to their proof. Jackam v. Hosp. Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579-80 (11th Cir. 1986).

### III. **ANALYSIS**

####   **A. Introduction**

In counts III and IV of Plaintiffs' Amended Complaint, Plaintiffs assert claims for strict liability. (Doc. # 14 at ¶¶ 16-31.) Defendant argues that Plaintiffs' counts III and IV "commingle" two distinct strict liability theories. (Doc. # 16-1 at p. 3.) Defendant argues that Plaintiffs' commingling of two theories in one count makes it unclear whether Plaintiffs seek strict liability because the sale of propane is an abnormally hazardous activity, or whether Defendant is strictly liable because the product it sold was defective. (Id.) In their response to Defendant's Motion to Dismiss, Plaintiffs state they attempted to allege both theories of strict liability, in each count III and IV. (Doc. # 20 at p. 4.) Thus, the Court will address counts III and IV accordingly.

Counts VII and VIII of Plaintiff's Amended Complaint assert claims for negligence per se. (Doc. # 14 at ¶¶ 44-57.) Plaintiffs alleged that Defendant had a duty to comply with liquid propane codes and regulations in effect at the time Defendant engaged in the sale of propane. Specifically, Plaintiffs argue that Defendant "is in violation of Florida Administrative Code 5F-11, and Florida Statute, Chapter 527, providing the enactment of same under Florida Law." (Doc # 14 at ¶ 46.) Plaintiffs further argue that "Florida law and the Florida Administrative Code requires that all persons

dispensing Propane shall be trained, and shall retain copies of written documentation indicating the training dates, along with the substance of the training." (Doc # 14 at ¶ 48.) Plaintiffs contend that Defendant violated the code and statute because "Defendant's Employee was not trained, and has no written documentation of any training concerning the dispensing of propane." (Doc # 14 at ¶ 45.) As such, Plaintiffs argue that Defendant's violations constitute negligence per se. (Doc # 14 pg. 6.)

The Court notes that this case is based on diversity jurisdiction. As such, the Court will apply the substantive law of the State of Florida "the way it appears the State's highest court would." Royal Ins. Co. of America v. Whitaker Contracting Corp., 242 F.3d 1035, 1040 (11th Cir. 2001).

**B. Count III and Count IV - Strict Liability**

In Plaintiffs' third and fourth causes of action, they allege that Defendant is liable for the propane explosion occurring at Defendant's filling station based on either of two distinct theories of strict liability. First, Plaintiffs argue Defendant is strictly liable for damages resulting from the explosion because the sale of propane is an inherently hazardous or abnormally dangerous activity.[3] Second, Plaintiffs argue that strict products

---

[3] This theory of liability is established in the seminal English case Rylands v. Fletcher, L.R. 3 H.L. 330 (1868). This theory of liability is well established in Florida. Great Lakes

liability attaches because Defendant sold defective propane or sold propane in a defective manner.[4]  For the reasons stated herein, the Court finds that counts III and IV of Plaintiffs' Amended Complaint should be dismissed without prejudice.

### i. Restatement of the Law of Torts §§ 519 and 520

First, with regard to Defendant's possible strict liability for the sale of an abnormally dangerous material, the Restatement of the Law of Torts § 519 defines this cause of action: (a) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of others, although he has exercised the utmost care to prevent the harm.[5]  The Court recognizes that "[t]he reasons for imposing strict liability upon those who carry on abnormally dangerous activity is that they have for their own purposes created a risk that is not a usual incident of the ordinary life of a community." Old Island Fumigation, Inc. v. Barbee, 604 So.2d 1246, 1248 (Fla. 3d DCA 1992).  The Restatement of the Law of Torts § 520 lists six factors that are pertinent when determining whether an activity rises to the level

---

Dredging and Rock Co. v. Sea Gull Operating Corp., 460 So.2d 510, 512 (Fla. 3d DCA 1984). Florida has fully adopted this theory as codified in the Restatement of the Law of Torts §§ 519 and 520. Id.

[4] This theory is derived from the Restatement of the Law of Torts § 402A.  Florida has fully adopted this theory. West v. Caterpillar Tractor Co., Inc., 336 So.2d 80, 87 (Fla. 1976).

[5] Recognizing the evolution of the law regarding strict liability, the American Law Institute substituted the words "abnormally dangerous" in the place of "ultrahazardous."

-6-

of abnormally dangerous, and thus warrants imposition of strict liability. These six factors are:

> (a) whether the activity involves a high degree of risk of some hardship to the person, land or chattels of others;
> (b) whether the harm which may result form it is likely to be great;
> (c) whether the risk cannot be eliminated by the exercise of reasonable care;
> (d) whether the activity is not a matter of common usage;
> (e) whether the activity is appropriate to the place where it is carried on; and
> (f) the value of the activity to the community.

The Restatement of the Law of Torts § 520

As noted supra, Florida has fully adopted Restatement of the Law of Torts §§ 519 and 520 for regulating abnormally dangerous activity. Quantifying the danger of propane, the Florida Supreme Court has held that storage of propane gas is considered an inherently dangerous activity. West, 336 So.2d at 85. However, the Florida Supreme Court has also emphasized that "a danger that is merely 'inherent' does not give rise to strict liability." Midyette v. Madison, 559 So.2d 1126, 1128 (Fla. 1990) (stating that some activities such as operating a crane can only be described as inherently dangerous, but do not automatically evoke a strictly liable classification).

Florida courts have found numerous instances where the application of strict liability is proper for certain inherently dangerous activities. Id. (finding that fumigation is an ultrahazardous activity evoking strict liability); Cities Service

Co. v. State, 312 So.2d 799, 804 (Fla. 2d DCA 1975) (finding strict liability proper for the abnormally dangerous activity of impounding phosphatic slimes behind earthen walls which were subject to breaking); Poole v. Lowell Dunn Co., 573 So.2d 51, 52 (Fla. 3d DCA 1991) (stating that blasting is an ultrahazardous activity and strict liability is proper).

The attempt to draw a line between strict liability and liability based on fault is a difficult one. Cities Service Co., 312 So.2d at 803. Thus, a determination between the two requires a discussion of the factors of Restatement § 520, reproduced supra.[6]

As mentioned, the Restatement of the Law of Torts § 520 notes that an important factor in determining whether strict liability is applicable to a certain dangerous activity is: (c) whether the risk cannot be eliminated by the exercise of reasonable care. Baltodano v. CTL Distrib., Inc., 820 So.2d 421, 422 (Fla. 3d DCA 2002) (finding that while the unloading of sulfuric acid from a tanker into hose and nozzle is a dangerous enterprise, it is not an ultrahazardous activity because the danger can be eliminated by the proper use of handling procedures); cf. Old Island Fumigation Inc., 640 So.2d at 1248 (applying Restatement of the Law of Torts § 520

---

[6] Factors (a) whether the activity involves a high degree of risk of some harm to the person, land or chattels of others, and (b) whether the harm which may result from it is likely to be great, are pretty clear in this case. The handling of a flammable commodity such as propane, unequivocally involves high degree of risk of great harm.

and holding that fumigation is an ultrahazardous activity because the risk cannot be eliminated by exercise of reasonable care). Here, the Court finds that the danger involved in the sale of propane can easily be eliminated by the exercise of reasonable care by use of proper handling and dispensing procedures such as employing properly trained attendants and performing routine inspections.

Additionally, factors (d), (e), and (f) of Restatement § 520 are easily satisfied in this case. The Court notes that the sale of propane at a filling station, such as Defendant's, is a rather common activity, and therefore considered of common usage. Lastly, the sale of propane is widely used, unlike the impounding of phosphatic slime.

After reviewing the factors of the Restatement of the Law of Torts § 520, the allegations in Plaintiffs' Amended Complaint, as a matter of law, do not rise to the level of ultrahazardous or abnormally dangerous to warrant strict liability. Thus, the Court finds Plaintiffs' argument that Defendant should be strictly liable for the sale of propane unpersuasive.

### ii. Restatement of the Law of Torts § 402A

Second, with regard to Defendant's possible strict liability for selling a defective product, the Restatement of the Law of Torts § 402A defines strict products liability as:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or the consumer or to

>his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or his property, if: (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

As noted, in Florida the seminal case of West fully adopted the doctrine of strict products liability for defective condition. While West dealt only with strict liability to the manufacturers of products, in accordance with comment (f) of Restatement of the Law of Torts § 402A, strict liability has subsequently been extended to retailers of the product. Visnoski v. J.C. Penny Co., 477 So.2d 29, 30 (Fla. 2d DCA 1985). The Court recognizes that "[a] product may be in a defective condition due to a design defect, a manufacturing defect or a defective warning." Brown v. Glade and Grove Supply, Inc., 647 So.2d 1033, 1035 (Fla. 4th DCA 1994). In Plaintiffs' Amended Complaint, no allegations were proffered regarding Defendant's failure to provide an adequate warning.[7] Thus, the Court will focus on the propane being sold in a defective condition due to a design defect or manufacturing defect.

Plaintiffs allege as follows in counts III and IV for strict liability:

>17. Defendant Flying J is engaged in the business of selling Propane.

---

[7] Plaintiffs have requested leave to amend their complaint to allege facts that Defendant failed to provide an adequate warning. (Doc. # 20 at 7.) To the extent the Court dismisses counts III and IV for failure to adequately allege a claim for strict liability, the Court will do so without prejudice to allow Plaintiffs an opportunity to amend their complaint accordingly.

    18. Propane is an inherently dangerous commodity.
    19. Defendant Flying J sold propane in a defective manner and condition unreasonably dangerous to the plaintiff and plaintiff's property.
    20. Defendant's dispensing agent/employee was not trained in dispensing propane in violation of Florida Statutes, Chapter 527, thereby creating an excessive and unreasonable danger to plaintiffs, who were not made aware of such factors.
    21. Furthermore, the employee/agent of defendant who dispensed the propane did not have any documentation indicating proof of training, in violation of Florida Administrative Code 5F-11, as adopted by and through the Florida Department of Agriculture and Consumer Services, under Florida Statutes, Chapter 527.
    22. The propane sold by Flying J was delivered to the plaintiff without substantial change in the condition in which it was sold.

Looking closely at the allegations in counts III and IV of Plaintiffs' Amended Complaint, there is nothing indicating that the propane was in a defective condition due to a design defect or manufacturing defect.  Plaintiffs' allegation that Defendant's agent/employee was untrained, attacks the method and manner in which Defendant dispensed the propane, not the defective condition or design of the propane itself.  Thus, in this case, the ignite of propane at Defendant's filling station does not suggest some sort of defect in the propane itself.  The Court finds Restatement 402A inapplicable in the present situation.

Accordingly, Counts III and IV of Plaintiffs' Amended Complaint are dismissed without prejudice pursuant to Rule 12(b)(6), Fed.R.Civ.P.  In finding either theory of strict liability inapplicable in the present case, the Court makes no findings or conclusions as to Defendant's liability for common law negligence

based on fault.

### C. Count VII and Count VIII - Negligence Per Se

Plaintiffs assert that Defendant's employee who dispensed the propane "was not trained, and has no written documentation of any training concerning the dispensing of propane." (Doc # 14 at ¶ 45.) Plaintiffs argue the Court should find Defendant negligent per se because Defendant violated Florida Administrative Code Chapter 11 and Florida Statute Chapter 527 by failing to train its employee on how to properly dispense propane. (Doc # 14 at ¶ 46.) "A cause of action in negligence per se is created when a penal statute is designed to protect a class of persons, of which the plaintiff is a member, against a particular type of harm." Newsome v. Haffner, 710 So.2d 184, 186 (Fla. 1st DCA), review denied, 722 So.2d 193 (Fla. 1988).

Plaintiffs, in their response to Defendant's Motion to Dismiss, state that "it is well established under Florida Law that violation of a fire code is negligence per se." (Doc. # 20 at 10.) Defendant argues that Plaintiffs have failed to state a claim of negligence per se because "neither Rule 5F-11 nor the corresponding Florida Statutes expressly provide for a civil cause of action." (Doc # 16-1 at 8.) For the reasons stated herein, the Court finds that counts VII and VIII of Plaintiffs' Amended Complaint should be dismissed without prejudice.

The seminal case in Florida concerning negligence per se is

-12-

Murthy v. N. Sinha Corp., 644 So.2d 983, 985 (Fla. 1994). In Murthy, the statute in question contained no express language establishing a private right of action. Id. In deciding whether to imply a private right of action, the Florida Supreme Court held that "legislative intent, rather than the duty to benefit a class of individuals, should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." Id. (emphasis added).

The Court notes that "a statute that does not purport to establish civil liability but merely makes provision to secure the safety or welfare of the public as an entity, will not be construed as establishing civil liability. Id. at 986. However, the Florida Supreme Court has noted that when a cause of action for negligence per se fails because the statute at issue does not expressly provide for one, a plaintiff still has a "right to bring a common law negligence claim based upon the same allegations." Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842, 852 (Fla. 2003) (holding that absent express language to the contrary, a private right of action under a statute that imposed various duties on health care insurance companies, should fail).

The Court determines that neither Chapter 11 of the Florida Administrative Code nor Chapter 527 of the Florida Statutes, allow for a private right of action. To the contrary, chapter 527.08 of the Florida Statutes provides a criminal penalty for violation of statute provisions:

> "[i]t is unlawful for any person to violate any of the provisions of this chapter or of the rules of the department made pursuant to this chapter. Any person violating any of the provisions of this chapter or such rule is guilty of a misdemeanor of the second degree, punishable as provided in § 775.083."

Chapter 11 of the Florida Administrative Code was merely established to allow the Department of Agriculture and Consumer Services to enforce the provisions of Florida Statutes Chapter 527. After careful review of the language of Chapter 527 of the Florida Statutes and Chapter 11 of the Florida Administrative Code, the Court finds that neither code section establishes a private right of action against those who violate one of the code's provisions.[8]

Even if the Court had found that Chapter 527 or Chapter 11 had created a private right of action, Plaintiffs have failed to establish the elements necessary to prove negligence per se. The Florida Supreme Court in, <u>deJesus v. Seaboard Coast Line Railroad Co.</u>, explained that there are three types of statutory violations, two of which constitute negligence per se and one that constitutes merely evidence of negligence. 281 So.2d 198, 201 (Fla. 1973). The two types that constitute negligence per se are: (1) strict liability statutes designed to protect a class of persons that

---

[8] The only mention of a private right of action under Chapter 527 occurs in § 527.04(c). This section requires those who wish to engage in the business of installation, dispensing or refilling of petroleum to post a surety bond. The section provides that a person "having a cause of action on such bond may bring suit against the principal and surety."

-14-

cannot protect themselves,[9] and (2) statutes that establish "a duty to take precautions to protect a <u>particular class of persons</u> from a particular injury or type of injury." Id. (emphasis added). The third category includes all other statutes and is merely evidence of negligence, not negligence per se. Id.

At first glance, Plaintiffs' injury appears to fall into the second category; however, the element of protected class is unsatisfied here. The Court, after reviewing chapter 527 of the Florida Statutes and Chapter 11 of the Florida Administrative Code, finds that the purpose of these regulations is to protect the general public from injury, as opposed to a particular class of persons. Thus, under <u>deJesus</u>, a violation of Chapter 527 or Chapter 11 falls into the third classification of statutory violations as only evidence of negligence, rather than negligence per se. <u>See Chevron U.S.A., Inc. v. Forbes</u>, 783 So.2d 1215, 1219 (Fla. 4th DCA 2001) (finding violation of Florida Statute 526.141 regulating gas station attendants was only evidence of negligence because the statute is designed to protect the general public as opposed to a particular class of persons); <u>Grand Union v. Rocker</u>, 454 So.2d 14, 15 (Fla. 3d DCA 1984) (holding that ramps built in violation of building codes did not constitute negligence per se because codes were designed to protect general public, not a particular class of people); <u>Lindsey v. Bill Arfin Bonding Agency</u>, 645 So.2d 565 (Fla.

---

[9] An example of this would be a statute prohibiting the sale of firearms to minors.

1st DCA 1994) (violation of a building code requiring handrails for stairwells was only evidence of negligence, not negligence per se); Schulte v. Gold, 360 So.2d 428 (Fla. 3d DCA 1978)(violation of a statute requiring proper lighting on steps was not negligence per se because the statute was designed to protect the public generally not a certain class of individuals).

The Court finds Plaintiffs' argument for negligence per se unpersuasive. Absent express wording to the contrary, Chapter 527 of the Florida Statutes and Chapter 11 of the Florida Administrative Code will not be construed as establishing civil liability for negligence per se. Thus, the Court dismisses without prejudice, counts VII and VIII of Plaintiffs' Amended Complaint.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

1. Defendant's Motion to Dismiss Counts III, IV, VII, and VIII of Plaintiffs' Second Amended Complaint and Incorporated Memorandum of Law (Doc. # 16-1) is **GRANTED.**
2. Counts III and IV of Plaintiffs' Amended Complaint for strict liability are **DISMISSED WITHOUT PREJUDICE.** Plaintiffs are granted leave to file an amended complaint within twenty days of the date of this order.

3.   Counts VII and VIII of Plaintiffs' Amended Complaint for negligence per se are **DISMISSED WITHOUT PREJUDICE.**

**DONE** and **ORDERED** in chambers in Jacksonville, Florida, this 31st day of July, 2006.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record