```
               UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
                   JACKSONVILLE DIVISION
```

Lise St. Cyr and Jacques St. Cyr,

       Plaintiffs,

v.                           Case No. 3:06-cv-13-33TEM

Flying J Inc.,

       Defendant.

_____/

## ORDER

This cause comes before the Court pursuant to Flying J's Motion for Summary Judgment (Doc. #32), filed on February 7, 2007, and the St. Cyrs' Response in Opposition to Defendant's Motion for Summary Judgment (Doc. #40), filed on February 22, 2007. For the reasons stated below, the Court will deny Flying J's request for dismissal, but will permit an adverse inference jury instruction.

**I. Factual Background**

Lise and Jacques St. Cyr are citizens of Quebec, Canada. (Doc. #32 at 2.) In 2001, the St. Cyrs purchased a 1985 Dodge conversion van for vacation travel. (Id.) The van contained a rear cabin which was equipped with a bed, and several propane gas powered appliances. (Id.) In November 2003, while vacationing in Florida, the St. Cyrs visited a Flying J service station in St. Augustine, Florida, for a propane refill. (Id.) Lise St. Cyr contends that before seeking the assistance of a service station attendant, she and her husband turned off the valves to the appliances both inside and outside of the van. (Id.) Lise St. Cyr also contends that upon the service attendant's attempt to connect

the propane nozzle to their propane tank, a flash fire explosion occurred that caused her and her husband to run away. (<u>Id.</u>) During the retreat, she fell and broke her wrist. (Doc. #40 at 3.)

Mr. Hal Blanton, an LP gas inspector for the State of Florida Department of Agriculture was consulted immediately following the incident to investigate the cause of the flash fire explosion. (Doc. #32 at 2-3.)  Mr. Blanton contends that the van was locked when he arrived, thus his inspection was limited to the outside of the van. (<u>Id.</u> at 3.)  However, by looking through the windows, he contends that he was able to see that the interior cabin of the van had sustained fire damage. (<u>Id.</u>)  Mr. Blanton left his business card on the van with a note asking the St. Cyrs to contact him so that he could inspect the interior cabin of the van in order to complete his investigation. (<u>Id.</u>)

The St. Cyrs contend that they contacted Mr. Blanton the following day and waited several hours for him, but he did not arrive before the van was towed to a nearby mechanic's garage. (<u>Id.</u>)  Mr. Blanton contends that when he arrived at Flying J later that day, he was directed to the mechanic's garage, however the St. Cyrs had already left with the van. (<u>Id.</u>)  Mr. Blanton asserts that the mechanic informed him that he had performed repairs to the electrical wiring of the van. (<u>Id.</u>)  Mr. Blanton also asserts that he was unable to locate the St. Cyrs again. (<u>Id.</u>)  Because he never had an opportunity to fully inspect the van, Mr. Blanton further asserts that he was unable to reach a conclusion as to the cause of the fire. (<u>Id.</u>)  Thus, in his report, he concluded that

2

the cause of the fire was "undetermined." (Id.)

Lise St. Cyr testified that she and her husband remained in Florida four months after the incident. (Doc. #40 at 6.) Jacques St. Cyr testified that after their four-month stay in Florida, he drove the van back to Canada and about a month later he sold it to a local scrapyard. (Doc. #33 at 34-35.) On April 1, 2006, approximately two and a half years after the incident, the St. Cyrs filed suit against Flying J. (Doc. #32 at 4.)

The St. Cyrs' second amended complaint, filed on August 24, 2006, alleges negligence (Counts I and II); strict liability (Counts III and IV); res ipsa loquitor (Counts V and VI); and, loss of consortium (Count VII). (Doc. #29 at 1-7.) Upon learning that the van had been destroyed, Flying J filed for Summary Judgment as to each count of the St. Cyrs' complaint. (Doc. #32 at 4.)

**II. Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'q Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law.  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial."  Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).  If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor.  Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment.  Samples *ex rel.* Samples v. City of Atlanta,

846 F.2d 1328, 1330 (11th Cir. 1988)(citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).

**III. Analysis**

Flying J argues that, as a result of the destruction of the van, Flying J is precluded from presenting a fully-informed defense. Namely, Flying J argues that inability to inspect the van "has effectively thwarted Flying J's ability to prove that the cause of the subject fire was due to either the fault of the Plaintiff or to some other defective nature in the van itself, particularly the gas appliances inside the cabin." (Doc. #32 at 4.) The St. Cyrs make several arguments in response. The St. Cyr's argue, inter alia: (1) that they were not under a duty to preserve the van and (2) that the destruction of the van does not cause any real impediment to Flying J in developing a defense strategy.

Federal law governs the imposition of sanctions for spoliation of evidence in a diversity action. See Martinez v. Brink's, Inc., 171 Fed. Appx. 263, 269 (11th Cir. 2006) (acknowledging that federal law, not state law, governs the imposition of sanctions, such as an adverse inference instruction); see also Flury v. Daimler Chrysler Corp., 427 F.3d 939, 943 (11th Cir. 2005). However, courts may look for guidance from state law as long as those principles are consistent with federal spoliation principles. Flury, 427 F.3d at 944; Optowave Co. v. Nikitin, No. 6:05-cv-1083, 2006 U.S. Dist. LEXIS 81345, at *24 (M.D. Fla. Nov. 7, 2006). The Court will first

5

determine whether the St. Cyrs' actions constituted spoliation. The Court will then determine the appropriate sanction.

**A. Existence of Spoliation**

"Spoliation" is "the intentional destruction, mutilation, alteration, or concealment of evidence." Black's Law Dictionary 1437 (8th ed. 2004). "Generally spoliation is established when the party seeking sanctions proves that (1) the missing evidence existed at one time; (2) the alleged spoliator had a duty to preserve the evidence; and,(3) the evidence was crucial to the movant being able to prove its prima facie case or defense." Floeter v. City of Orlando, No. 6:05-cv-400, 2007 U.S. Dist. LEXIS 9527, at *15 (M.D. Fla. Feb. 9, 2007) (citing Optowave, 2006 U.S. Dist. LEXIS 81345, at *8; Golden Yachts, Inc. v. Hall, 920 So. 2d 777, 781 (Fla. 4th DCA 2006).

There is no dispute that the evidence, the subject van, existed at one time. As to the second element, the St. Cyrs argue that they were not under a "duty to preserv[e] evidence just in anticipation of possible litigation." (Doc. #40 at 12)(citing Royal & Sunalliance v. Lauderdale Marine Center, 877 So. 2d 843 (Fla. 4th DCA 2004)). Notwithstanding this contention, federal law, which controls, makes clear that a litigant "'is under a duty to preserve what it knows, or reasonably should know, is relevant [to litigation or potential litigation] . . . .'" Telectron, Inc. v. Overhead Door Corp., 116 F.R.D. 107, 127 (S.D. Fla. 1987)(quoting Wm. T. Thompson

Co. v. General Nutrition Corp., 593 F. Supp. 1443, 1455 (C.D. Calif. 1984)). Thus, the duty to preserve evidence may arise prior to commencement of litigation. Indeed, the Court finds that the St. Cyrs contemplated litigation and that it was reasonably foreseeable that the van would be relevant to the litigation. Thus, the St. Cyrs were under a duty to preserve the van.

First, the very fact that the St. Cyrs filed suit indicates that they contemplated litigation. Valentine v. Mercedes-Benz Credit Co., 98-Civ-1815, 1999 U.S. Dist. LEXIS 15378, at *9 (S.D.N.Y. September 30, 1999)(taking the fact that it was plaintiffs who commenced litigation as evidence that the plaintiffs were on notice that there was the potential of litigation). Bolstering this indication, is the fact that the St. Cyrs took pictures of the damaged van before its destruction. (Doc. #40 at 9.) Additionally, the severity of the injuries and damages indicate that litigation was contemplated. Lastly, and most significantly, the Court notes that shortly after the incident, and before they destroyed the van, the St. Cyrs were referred to and/or consulted with an attorney. (Doc. #34 at 9-10.) Taken together, the Court finds that these facts establish that the St. Cyrs contemplated litigation. Moreover, it is undoubtedly foreseeable that the van was an integral piece of evidence, and thus should have been preserved. For these reasons, the St. Cyrs' argument that they had no duty to preserve the van prior to the initiation of this lawsuit fails.

Addressing the third element, the Court finds that the van was a crucial piece of evidence. The Court recognizes that although the existence of photographs, reports, and expert opinions are of some value, examination of the actual evidence allows the opposing party a valuable opportunity to test and analyze the validity of the spoliator's theories of fault. See Flury, 427 F.3d at 946 (stating that without the subject vehicle, the defendant lost a valuable opportunity to test the plaintiff's theories); see also Bridgestone/Firestone North America Tire, LLC v. Campbell, 574 S.E.2d 923, 926 (Ga. Ct. App. 2002) (stating that the existence of photographs may mitigate the loss, however they are no substitute for the actual evidence, especially if the photographs are taken by individuals who are unqualified to take forensic photographs).[1] Thus, the Court finds that the examination of the van itself is important evidence and is crucial to Flying J's ability to determine the cause of, or the factors possibly contributing to, the explosion and fire. Since all of the elements have been met, the Court finds that spoliation of evidence has occurred.

**B. Appropriate Sanctions**

Federal courts possess the inherent power to regulate litigation, and broad discretion to sanction litigants for abusive practices. Telectron, Inc. v. Overhead Door Corp., 116 F.R.D. 107,

---

[1] In Flury, the Eleventh Circuit explained that "Georgia state law on spoliation is wholly consistent with federal spoliation principles." Flury, 427 F.3d at 944.

126 (S.D. Fla. 1987) (citing <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752 (1980); <u>Van Bronkhorst v. Safeco Corp.</u>, 529 F.2d, 943, 951 (9th Cir. 1976); <u>Wm. T. Thompson Co. v. General Nutrition Corp.</u>, 593 F. Supp. 1443, 1445 (C.D. Calif. 1984)). If a court determines that a sanction for spoliation of evidence is warranted, the "determination of an appropriate sanction . . . is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." <u>Optowave</u>, U.S. Dist. LEXIS 81345, at *37 (citing <u>Zubulake v. UBS Warburg LLC</u>, 229 F.R.D. 422, (S.D.N.Y. 2004)).

In <u>Flury</u>, the Eleventh Circuit Court determined that "as sanctions for spoliation, courts may impose the following: (1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." 427 F.3d at 945. In this circuit, a court may draw an adverse inference from a party's failure to preserve evidence "only when the absence of that evidence is predicated on bad faith," such as where a party purposely loses or destroys relevant evidence. <u>Bashir v. AMTRAK</u>, 119 F.3d 929, 931 (11th Cir. 1997).

Factors to be considered when determining the seriousness of the sanctions to impose against a party for failure to preserve critical evidence in its custody vary according to (1) the willfulness or bad faith of the party responsible for the loss or destruction of the evidence; (2) the degree of prejudice sustained

9

by the opposing party; and (3) what is required to cure the prejudice. Fleury v. Biomet, Inc., 865 So. 2d 537, 539 (Fla. 2d DCA 2005) (citing Harrell v. Mayberry, 754 So. 2d 742, 745 (Fla. 2d DCA 2000)); Sponco Mfg., Inc. v. Alcover, 656 So. 2d 629, 630 (Fla. 3d DCA 1995).  The Court examines each factor in turn.

**1. Willfulness or Bad Faith**

As noted, in order to allow an adverse inference the Court must find bad faith.  "'Mere negligence' . . . is not enough for an adverse inference, as 'it does not sustain an inference of consciousness of a weak case.'" Bashir, 119 F.3d at 931 (quoting Vick v. Texas Employment Comm'n, 514 F.2d 734, 737 (5th Cir. 1975)). In addressing the bad faith factor in Flury, the Eleventh Circuit "weigh[ed] the degree of the spoliator's culpability . . . ." Flury, 427 F.3d at 946 (citing Bridgestone/Firestone North America Tire, 574 S.E.2d at 927).

Weighing the St. Cyrs' culpability, the Court finds that the St. Cyrs' conduct amounted to more than mere negligence.  Indeed, the Court finds that the conduct breached the bad faith barrier. However, the St. Cyrs' degree of culpability does not rise to the same level as that of the plaintiff in Flury, the case on which Flying J principally relies.  Namely, the Court identifies that in Flury, plaintiff's counsel had received a letter from opposing counsel requesting the location of the vehicle for inspection purposes.  Plaintiff's counsel never provided the location of the

10

vehicle and, without notifying opposing counsel, allowed the insurer to remove the vehicle and sell it for salvage. Clearly, the plaintiff in Flury bore a higher degree of culpability than the St. Cyrs. Accordingly, the Court finds that, while bad faith existed, the degree of bad faith was minimal.

**2. Prejudice**

"The most obvious and important type of prejudice arises when a party blocks its opponent's access to evidence that the opponent needs to fairly litigate a consequential issue, claim, or defense." 7 Moore's Federal Practice § 37.50[1][a] (3d ed. 2002). Addressing the prejudice to the Defendant, in Flury, the Eleventh Circuit found that the defendant was severely prejudiced when the plaintiff, without notice to the defendant, destroyed the vehicle which was the very subject of his lawsuit and failed to respond to the defendant's request for production. 427 F.3d at 945. So finding, the Eleventh Circuit provided that "[s]poliation of the vehicle forced experts to use much less reliable means of examining the product's condition." Id. at 946.

Flying J has been similarly prejudiced. Namely, (1) Flying J has been denied an opportunity to test the evidence in order to determine whether there were other possible causes or contributing factors to the flash fire explosion and (2) Flying J has been denied more reliable means of proving or disproving the validity of the St. Cyr's theories of fault.

11

**3. Cure**

"Outright dismissal of a lawsuit . . . is within the court's discretion." Chambers v. Nasco, 501 U.S. 32, 45 (1991). However, dismissal is the most severe sanction that a federal court can impose. Flury, 427 F.3d at 944. Thus, dismissal is appropriate only where alternative lesser sanctions will not suffice. Flury, 427 F.3d at 944 (citing Graton v. Great Am. Commc'ns, 178 F.3d 1373, 1374 (11th Cir. 1999); see also Harrell, 754 So. 2d at 744 ("Using the ultimate sanction of dismissal should always be viewed as a remedy of last resort . . . .") (quoting New Hampshire Ins. Co. v. Royal Ins. Co., 559 So. 2d 102, 103 (Fla. 4th DCA 1990)). Dismissal "represents, in effect, an infringement upon a party's right to trial by jury under the Seventh Amendment; it runs counter to a sound public policy of deciding cases on their merits; and finally it works against the goal of providing each party its fair day in court." Telectron, 116 F.R.D. at 129 (citing Wilson v. Volkswagen, 561 F. 2d 494, 503-04 (4th Cir. 1977)). In Wilson, the Fourth Circuit provided:

> Because of the importance of the these constitutional and policy considerations, . . . . the exercise of the power should be confined to the "flagrant case" in which it is demonstrated that the failure to produce "materially affect[s] the substantial rights of the adverse party" and is prejudicial to the presentation of his case." This is so because a default judgment should normally not be imposed "to foreclose the merits of controversies as punishment for general misbehavior" save in that rare case where the

12

> conduct represents such "flagrant bad faith" and "callous disregard" of the party's obligations under the Rules as to warrant the sanction not simply for the purpose of preventing prejudice to the discovering party but as a necessary deterrent to others.

Id. at 129 (citing Wilson, 561 F.2d at 504).

For the reasons stated in section III-B(2), above, the Court cannot find that the bad faith evidenced by the St. Cyrs' conduct was flagrant. Nor can the Court find that the St. Cyrs acted in callous disregard. Thus, while the Court must take action to cure the prejudice stemming from the destruction of the van, dismissal is not the appropriate cure. Instead, the Court finds that the lesser sanction of an adverse inference instruction to the jury will suffice to cure the prejudice to Flying J.

Accordingly, it is now

**ORDERED, ADJUDGED** and **DECREED:**

1. Flying J's Motion for Summary Judgment (Doc. #32) is **DENIED.**

2. The Court will give an adverse inference jury instruction. The parties should submit the proposed adverse inference instruction along with their other proposed jury instructions.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 12th day of June, 2007.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

13

Copies:

All Counsel of Record