```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                      JACKSONVILLE DIVISION
```

LISE ST. CYR AND JACQUES ST. CYR,

                Plaintiffs,

v.                         Case No.   3:06-cv-13-J-33TEM

FLYING J INC.,

                Defendant.
_____/

## ORDER

This cause comes before the Court pursuant to Defendant Flying J, Inc.'s Motion to Strike Walter Lacoskie from Plaintiffs' Witness List (Doc. # 84), filed on August 27, 2007. Plaintiffs filed a response in opposition to the motion to strike on August 31, 2007 (Doc. # 100). For the reasons that follow, this Court **DENIES** Defendant's Motion to Strike.

### I.   Background

Lise and Jacques St. Cyr are citizens of Quebec, Canada. (Doc. # 29.) In November 2003, while in Florida, the St. Cyrs visited a Flying J service station in St. Augustine, Florida to refill propane in their van. Id. The St. Cyrs contend that the Flying J negligently failed to dispense propane properly and that as a result, an explosion occurred resulting in (1) damage to the St. Cyrs' van; and (2) personal injury to Lise St. Cyr. Id. It is uncontested that the St. Cyrs drove the van back to Quebec in April

of 2004 and, approximately one month thereafter, sold the van to a junkyard for scraps. (Doc. # 40 at 7.)

On February 8, 2005, the St. Cyrs filed their Complaint against Flying J in state court, and on January 5, 2006, Flying J removed the case to this Court pursuant to 28 U.S.C. § 1441(a). (Doc. # 1.) After successive motions to dismiss, the St. Cyrs filed their second amended complaint on August 24, 2006, alleging negligence (Counts I and II); strict liability (Counts III and IV); res ipsa loquitor (Counts V and VI); and loss of consortium (Count VII). (Doc. # 29 at 1-7.)

On February 8, 2007, Flying J filed a motion for summary judgment. (Doc. # 32.) Flying J asserted that summary judgment in its favor was warranted due to the St. Cyrs' spoliation of the van, which Flying J contends is the primary piece of evidence in this case: "In essence, the destruction of the van has effectively thwarted Flying J's ability to prove that the cause of the subject fire was due to either the fault of the Plaintiff or to some other defective nature in the van itself, particularly the gas appliances inside the cabin." (Doc. # 32 at 4.) The St. Cyrs filed a response in opposition to the motion for summary judgment on February 22, 2007 (Doc. # 40) accompanied by affidavits.

After due deliberation and consideration of the parties' submissions, this Court found that spoliation of the van had occurred; however, this Court declined to enter summary judgment in

favor of Flying J, deeming that an adverse inference jury instruction was a more appropriate sanction under the circumstances of this case. (Doc. # 61.)  As to spoliation, this Court specifically found: "the examination of the van itself is important evidence and is crucial to Flying J's ability to determine the cause of, or the factors possibly contributing to, the explosion and fire.  Since all of the elements have been met, ths Court finds that spoliation of evidence has occurred." (Doc. # 61 at 8.)

Plaintiffs have designated Walter Lacoskie as a "may call" fact witness who has knowledge about the Flying J's facilities at the time of the accident, the actions of the St. Cyrs, the injuries to Mrs. St. Cyr, and where the St. Cyrs went after the accident, and what the St. Cyrs did after the incident.  Flying J now seeks an order barring Walter Lacoskie from offering testimony at the trial because Flying J has yet to depose Mr. Lacoskie.

## II. **Legal Standard**

The district court has broad discretion to determine the admissibility of evidence, and the appellate court will not disturb this Court's judgment absent a clear abuse of discretion. United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998); see also United States v. Jernigan, 341 F.3d 1273, 1285 (11th Cir. 2003)("Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first-hand

access to documentary evidence and is physically proximate to testifying witnesses and the jury.")

An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment. Tran v. Toyota Motor Corp., 420 F.3d 1310, 1315 (11th Cir. 2005)(citations omitted). Further, the Eleventh Circuit has pronounced: "We will only reverse a district court's ruling concerning the admissibility of evidence where the appellant can show that the judge abused his [or her] broad discretion and that the decision affected the substantial rights of the complaining party." Wood v. Morbark Indus., Inc., 70 F.3d 1201, 1206 (11th Cir. 1995).

**III. Analysis**

On February 22, 2007, during the summary judgment phase of this case, Plaintiffs filed the Affidavit of Walter Lacoskie (Doc. # 44-2), in which Mr. Lacoskie averred, among other things, that:

- I drove Jacques in my van to the Hospital, while Lise was being transported by Ambulance.
- I stayed with Lise and Jacques at the Hospital, until I took them to the Comfort Inn.
- I noticed that the van was moved approximately 10-15 feet.
- At that time, I noted that the van was locked. I noticed a business card from the LP inspector, asking Lise and Jacques to call him.
- While they were waiting to see the Dr., I called the LP inspector. He did not answer the phone. I tried a second time and he answered.
- I told him my name, gave him my cellular telephone number, and told him to come to Flying J, to look at the "mess" regarding the hose and van. The conversation was minimal.

- We returned to the Flying J at approximately 4:00 p.m.
- The Flying J lady gave me the keys to the van.
- Flying J had complete control and possession of the van for approximately 24 hours.
- Flying J moved the van, locked the van and had the keys.
- The following morning I took Lise and Jacques back to their vehicle, where we began to clean the interior.
- It [took] more than one week to clean the interior of the van. I helped them.
- All three of us observed the interior and the exterior of the van.
- I myself have been Certified and licensed to dispense Propane in the State of Pennsylvania. I was Certified and licensed for 15 years prior to my retirement.
- At every other Flying J that I have ever been to, there would be a "retractor" for the hose, so that it did not sit lying on the ground, where it could get damaged.
- At the location of this accident, there was no retractor.
- The manager of Flying J came over to check the propane filling station.  He appeared to only be concerned about the meter and not about the health and well-being of the people that had been hurt.
- I noticed that there was a lot of hose tangled up in a mess on the ground around the big propane tank.  The propane tank appeared to hold approximately 250 to 500 gallons and had approximately 50' of hose all wadded up.  There was no hose reel, nor were there any groundling straps from the tank to the area where the vehicles park to fill their propane tanks.  There were no safety measure taken to prevent the type of static spark that started the fire.

(Doc. # 44-2 at 1-5)

Defendant asserts that Mr. Lacoskie should be barred from offering testimony because Flying J has yet to have the opportunity to depose Mr. Lacoskie.  However, the record supports that Flying J has access to Mr. Lacoskie's cellular telephone number.  It is not clear that Flying J has made an effort to contact Mr. Lacoskie directly, and it appears that Flying J has not attempted to subpoena Mr. Lacoskie.  Nevertheless, the record supports that

counsel for Flying J attempted to coordinate a possible deposition of Mr. Lacoskie with counsel for Plaintiffs on multiple occasions with no success.

While Plaintiffs are not required to deliver Mr. Lacoskie to the Flying J on a silver platter, it seems that counsel for Plaintiffs is in touch with Mr. Lacoskie, that Mr. Lacoskie is a "plaintiffs' witness" and that there is a greater chance that Mr. Lacoskie would answer a call from Plaintiffs' counsel than he would a call from counsel for Flying J.

Defendant does not allege that Plaintiffs intentionally interfered with Defendant's access to Mr. Lacoskie, and accordingly, this Court will not strike Mr. Lacoskie from Plaintiffs' witness list at this time. Instead, this Court will allow Flying J a reasonable opportunity to take the deposition of Mr. Lacoskie prior to the trial. However, if Defendant attempts to depose Mr. Lacoskie and is unable to depose Mr. Lacoskie prior to the trial (due to Mr. Lacoskie's unavailability or due to lack of cooperation by Plaintiffs' counsel) the Court will consider striking Mr. Lacoskie from Plaintiffs' witness list.[1] This Court notes that witness preclusion is a harsh sanction that should be imposed sparingly and only when other sanctions are unavailable.

---

[1] This Court will not strike Mr. Lacoskie from Plaintiffs' witness list on the basis of any conduct of the Flying J that appears to be calculated to lead to problems with Mr. Lacoskie's deposition so as to preclude Mr. Lacoskie's testimony at trial.

See <u>Weaver v. Lexington Ins. Co.</u>, 8-05-cv-1913-T-27TBM, 2007 U.S. Dist. LEXIS 32230 (M.D. Fla. May 2, 2007)(characterizing the sanction of witness preclusion as "drastic").

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED** that:

(1) Defendant Flying J, Inc.'s Motion to Strike Walter Lacoskie from Plaintiffs' Witness List (Doc. # 84) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Jacksonville, Florida, this <u>6th</u> day of September, 2007.

*(signature)*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record