UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Lise St. Cyr and Jacques St. Cyr,

                 Plaintiffs,

v.                               Case No.  3:06-cv-13-J-33TEM

Flying J Inc.,

                 Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Plaintiffs'
Motion to Strike Ladon Richardson Pursuant to Daubert and/or Motion
in Limine Limiting the Scope of Mr. Richardson's Testimony (Doc. #
123), which was filed on September 24, 2007. Defendant filed a
response in opposition to the motion on October 4, 2007 (Doc. #
148), and Plaintiffs filed a reply to Defendant's response on
October 15, 2007. (Doc. # 155).

For the reasons that follow, Plaintiffs' motion is granted in
part and denied in part.

**I.   Background**

Plaintiffs Lise and Jacques St. Cyr are citizens of Quebec,
Canada. (Doc. # 29).  In November 2003, while in Florida, the St.
Cyrs visited a Flying J service station in St. Augustine, Florida
to refill propane in their van. (Doc. # 29).  The St. Cyrs contend
that the Flying J negligently failed to dispense propane properly
and that as a result, an explosion occurred resulting in (1) damage
to the St. Cyrs' van; and (2) personal injury to Lise St. Cyr.
(Id.)

A.    **The Spoliation Finding**

It is uncontested that the St. Cyrs drove the van back to Quebec in April of 2004 and, approximately one month thereafter, sold the van to a junkyard for scrap. (Doc. # 40 at 7).

On February 8, 2005, the St. Cyrs filed their Complaint against Flying J in state court, and on January 5, 2006, Flying J removed the case to this Court pursuant to 28 U.S.C. § 1441(a). (Doc. # 1).  After successive motions to dismiss, the St. Cyrs filed their second amended complaint on August 24, 2006, alleging negligence (Counts I and II); strict liability (Counts III and IV); res ipsa loquitor (Counts V and VI); and, loss of consortium (Count VII).  (Doc. # 29 at 1-7).

On February 8, 2007, Flying J filed a motion for summary judgment. (Doc. # 32).  Flying J asserted that summary judgment in its favor was warranted due to the St. Cyrs' spoliation of the van, which Flying J contends is the primary piece of evidence in this case: "In essence, the destruction of the van has effectively thwarted Flying J's ability to prove that the cause of the subject fire was due to either the fault of the Plaintiff or to some other defective nature in the van itself, particularly the gas appliances inside the cabin." (Doc. # 32 at 4).  The St. Cyrs filed a response in opposition to the motion for summary judgment on February 22, 2007. (Doc. # 40).

After due deliberation and consideration of the parties' submissions, this Court found that spoliation of the van had occurred; however, this Court declined to enter summary judgment in favor of Flying J, deeming that an adverse inference jury instruction was a more appropriate sanction under the circumstances of this case. (Doc. # 61).   As to spoliation, this Court specifically found: "the examination of the van itself is important evidence and is crucial to Flying J's ability to determine the cause of, or the factors possibly contributing to, the explosion and fire.  Since all of the elements have been met, ths Court finds that spoliation of evidence has occurred." (Doc. # 61 at 8).

**B.   The Debate Regarding LaDon Richardson**

Plaintiffs first sought an order striking Richardson's testimony on June 25, 2007 (Doc. # 66), arguing (1) that his testimony would be cumulative of other Flying J experts, and (2) that Richardson was prohibited from offering testimony pursuant to Florida Statute Section 493.6100 because Richardson does not possess a Florida fire investigator's license.

After due consideration, this Court entered an order denying Plaintiffs' motion to strike Richardson on August 20, 2007. (Doc. # 76).  This Court determined that Richardson's testimony would not be cumulative and that Defendant's listed experts "possess different qualifications and are available to be called upon by Flying J for different testimony." (Doc. # 76 at 5).  Further, this

Court did not interpret the aforementioned Florida Statute as a bar to Richardson's potential testimony.  This Court also noted that Plaintiffs had yet to depose Richardson, so Plaintiffs lacked information about the substance of Richardson's testimony and its foundation.  Accordingly, Plaintiffs' initial motion to strike Richardson was denied.

By the instant motion, Plaintiffs again request an order barring Defendant from presenting the expert testimony of Richardson.  Plaintiffs assert that Richardson lacks expertise regarding Liquified Propane (hereafter, "LP") and static electricity, and thus, he should be prohibited from offering expert testimony regarding the cause and origin of the fire in question. In addition, Plaintiffs request an order prohibiting Richardson from providing expert testimony regarding "rules, regulations, or compliance issues" and prohibiting Richardson from "attribut[ing] responsibility, fault or liability" in this case. (Doc. # 123 at 22).

Plaintiffs deposed Richardson on August 28, 2007, and Plaintiffs' motion contains citations to Richardson's testimony. Plaintiffs assert that Richardson admitted during his deposition (1) that he is not a qualified expert as to LP systems; (2) that he is not a qualified expert as to static electricity; and (3) that

his opinions are inconclusive.[1]   Plaintiffs request a hearing pursuant to <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) so that this Court may determine whether Richardson is qualified to offer expert testimony in this cause.

Defendant, on the other hand, contends that Plaintiffs' motion is moot or otherwise inapplicable because Defendant does not intend to use Richardson as an LP expert or static electricity expert. Furthermore, Defendant asserts that "Richardson's testimony that Plaintiffs, as the owners of the conversion van, are responsible for its maintenance and upkeep, is perfectly admissible." (Doc. # 148 at 8). In addition, Defendant asserts that "Plaintiffs have utterly failed to undertake a true <u>Daubert</u> analysis [and] [c]ross examination of Mr. Richardson at trial is the proper forum for Plaintiffs' challenge." (Doc. # 148 at 7).

The Court finds that a <u>Daubert</u> evidentiary hearing is not necessary.  Plaintiffs' challenges of Richardson's testimony and Defendant's response have been thoroughly briefed and competently articulated in the parties' legal memoranda. (Doc. ## 123, 148, 155).   Oral argument or other proceedings are not necessary to further develop the record at this point.   This decision is squarely within the Court's discretion. See <u>Kuhmo Tire Co. v.</u>

---

[1] Plaintiffs focus on the following transcript references, which this Court has reviewed: (Richardson Dep. Doc. # 132-2 at 30:8-9, 32:15-19, 42:8-12, 54:6-25, 55:1-25, 56:8-14, 59:7-23, 70:1-25, 71:1-25, 87:1-2, 90:12-25, 91:1-25, 92:1-25).

Carmichael, 526 U.S. 137, 152 (1999)("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"); Nelson v. Tennessee Gas Pipeline Co., 243 F.3d 244, 249 (6th Cir. 2001)("whether to hold an evidentiary hearing [on Daubert challenge] is a question that falls within the trial court's discretion").

## II.  **Analysis**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Rule 702 is a codification of the Court's landmark case of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). In Daubert, the Court determined that the district court serves as a gatekeeper in determining the admissibility of expert testimony, and directed the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." Id. at 589; see also United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004)("The importance of Daubert's

-6-

gatekeeping requirement cannot be overstated. . . .  The district court's role is especially significant since the expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it.   Indeed, no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts in the case").   In Kuhmo Tire Co., the Court extended its reasoning in Daubert to non-scientist experts, applying it also to testimony on technical and other specialized knowledge.   526 U.S. at 141.

As stated in the advisory committee notes accompanying Rule 702 of the Federal Rules of Evidence, "A review of the case law after Daubert shows that the rejection of expert testimony is the exception rather than the rule."   See Advisory Committee Notes to the 2000 Amendment to Rule 702.   Further, "Daubert did not work a 'seachange over federal evidence law,' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system."   Id. (quoting United States v. 14.38 Acres of Land, 80 F.3d 1074, 1078 (5th Cir. 1996)).   In addition, the trial judge is afforded broad discretion in deciding Daubert issues.   As stated in Kumho Tire Co., the trial judge has the discretion "both to avoid unnecessary reliability proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's

reliability arises." <u>Kuhmo Tire Co.</u>, 526 U.S. at 152.  Further, the <u>Kuhmo Tire Co.</u> Court admonishes that "the Rules seek to avoid 'unjustifiable expense and delay' as part of their search for 'truth' and the 'just determination' of proceedings." <u>Id.</u> at 152-153 (quoting Fed. R. Evid. 102).

In <u>Rink v. Cheminova, Inc.</u>, 400 F.3d 1286 (11th Cir. 2005), the Eleventh Circuit ruled:

> To fulfill their obligation under <u>Daubert</u>, district courts must engage in a rigorous inquiry to determine whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

<u>Rink</u>, 400 F.3d at 1291-1292 (citing <u>City of Tuscaloosa v. Harcros Chems., Inc.</u>, 158 F.3d 548, 562 (11th Cir. 1998)).  The party offering an expert has the burden of satisfying each of these elements by a preponderance of the evidence. <u>Rink</u>, 400 F.3d at 1292; <u>see also</u> <u>Allison v. McGhan Med. Corp.</u>, 184 F.3d 1300, 1306 (11th Cir. 1999)("The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence").

Plaintiffs challenge Richardson on all three prongs of the Eleventh Circuit's test, as enumerated in <u>Rink</u>, asserting:

Mr. Richardson's deposition testimony demonstrates that he lacks the requisite qualifications pursuant to these Rule 702 requirements, to provide expert testimony with regard to origin and cause in this case.  It is also evident from his deposition testimony that his opinions are not based upon sufficient facts or data, nor are they [the] product of reliable principles and methods. Neither has he applied the principles of fire investigation contained in N.F.P.A 921 in an accurate or reliable fashion to the evidence and facts in this case. His opinion testimony will confuse, rather than assist the jury in understanding the evidence in this case.

(Doc. # 123 at 4).

### A.   Richardson's Qualifications

Plaintiffs rely on Richardson's own statements to challenge Richardson's qualifications, reliability, and ability to assist the trier of fact.  Richardson stated during his deposition that he is not an expert concerning static electricity (Richardson Dep. Doc. # 123-2 at 87:1-2 "I am not an expert in static electricity"). Further, Richardson recognized during his deposition that his knowledge of LP systems was somewhat limited. (Richardson Dep. Doc. # 123-2 at 30:8-9 "I'm not an expert in propane fuel gas systems").

Some of Richardson's own statements regarding the scope of his knowledge and competence give this Court pause.  Nevertheless, after reviewing his deposition testimony in total, as well as the parties' submissions, this Court declines to strike Richardson as an expert on the basis of his above-referenced comments.

The record reflects that Richardson "is expected to testify concerning the cause and origin of fires and explosions. He is expected to testify concerning causation issues relative to the

subject incident.   His opinions are based on his background, training, experience, and review of the pertinent records and documents pertaining to the subject incident." (Doc. # 66-4 at 2). Further, Defendant does not offer Richardson as a static electricity expert or a LP expert.

Rule 702 permits a person to qualify as an expert based upon knowledge, skill, experience, training, <u>or</u> education.   <u>United States v. Bennett</u>, 368 F.3d 1343, 1356 (11th Cir. 2004).  The Court finds that the Defendant has satisfied its burden under Rule 702. During his deposition, Richardson stated that he has performed roughly three LP investigations per year over his 22-year career. (Doc. # 123-2 at 84). Further, this Court finds the following testimony from Richardson's testimony to be relevant to the instant determination:

> Q.   Okay.  So although you said you're not an expert in
>       propane gas systems, you certainly are an expert to
>       the cause and origin of fires resulting from
>       propane?
> A.   Yes.
>                         . . . .
> Q.   Okay.  Are you qualified to do an investigation on
>       a fire involving propane?
> A.   Certainly.
> Q.   Okay.  And your comment that you are not an expert
>       on fuel gas systems, why did you say that if you
>       are an expert relative to cause and origin of
>       propane fires?
> A.   Well, it's just two different issues.
> Q.   Okay.  Please explain just so there is no confusion
>       here.
> A.   Well, the cause and origin of fire is – is one set
>       of situations.  The fuel gas system, itself, can be
>       of many different types and they're whole technical

> manuals and N.F.P.A. guidelines for those.   And
> that's just not my area of expertise.
>
> Q.    Okay.   But your expertise goes to areas such as
>       where the fire first occurred, where the ignition
>       source is or was and where fuel leaks began; is
>       that correct?
>
> A.    Yes.

(Richardson Dep. Doc. # 123-2 at 30:17-20, 32:5-23).

In addition, it is worth mentioning that Richardson's Curriculum Vitae spans thirteen pages. (Doc. # 66-4 at 3-16). Since receiving his Bachelor of Science Degree in chemistry with minors in math and physics from Cameron University in Oklahoma in 1970, and his Master of Science Degree in career development and criminal justice from Abilene Christian University in Texas in 1977, Richardson has ben actively employed in his field.   He owns "Richardson & Associates, Inc.," a firm whose primary business is "consulting on the cause and origin of fires and explosions" (Doc. # 66-4 at 3).   Prior to opening his own firm, Richardson served as Senior Special Agent for the Bureau of Alcohol, Tobacco, and Firearms in Dallas, Texas investigating bombings, arson, and explosions. (Doc. # 66-4 at 3).   Richardson also worked as a certified fire investigator for the Bureau of Alcohol, Tobacco, and Firearms' Western Region National Response Team. (Doc. # 66-4 at 3).   Richardson is an instructor, a consultant, and has actively participated in numerous training and certification programs during

his long and fruitful career (Doc. # 66-4 at 3-16).[2]  Richardson's
professional qualifications and vast experience in the cause and
origin of fires more than qualify him in offering an opinion in the
small explosion that occurred in the present case.  Richardson is
imminently qualified, perhaps overqualified, to offer his opinion
in this case, and this Court declines to strike him as an expert
due to his candid comments offered during his deposition.[3]

   B.   **Reliability of Richardson's Testimony**

   Having determined that Richardson is qualified to offer expert
testimony competently regarding the matters he intends to address,
this Court will now examine the reliability of Richardson's
methodology.

   Plaintiffs' lengthy submissions challenging Richardson's
opinions lack a concrete argument regarding the reliability of

---

[2] In this Court's Order which denied Plaintiffs' first motion
to strike Richardson's testimony, this Court also found that
Richardson is a certified licensed fire investigator with the State
of Texas and is also a certified fire investigator with the United
States Treasury Department, the Bureau of Alcohol, Tobacco, and
Firearms, the International Association of Arson Investigators, and
the National Board of Fire Service Professional Qualifications.
(Doc. # 70 at 3).  Furthermore, Richardson has been a member of the
National Fire Protection Association for over twenty (20) years.
(Doc. # 70 at 3).

[3] The Court agrees with Plaintiffs that Richardson lacks the
given expertise to describe how LP mechanisms operate.  However,
Defendant has stated that Richardson will not testify regarding LP
mechanisms but only to the origins and cause of the instant fire.
(Doc. # 148 at 5).  The Court does not require an expert witness to
be qualified as an expert with regard to every fact that may arise
in a given case.  As such, this Court rejects Plaintiffs' proffered
challenge.

Richardson's testimony.   It appears that Plaintiffs agree that Richardson uses the scientific method and other reliable methods to evaluate the evidence in this case (namely the standards set by the National Fire Prevention Association ("N.F.P.A.")), but that Plaintiffs merely disagree with Richardson's findings.[4]  Plaintiffs would have the Court strike Richardson's testimony on the sole basis that Plaintiffs' expert has arrived at a different conclusion as to the cause and origin of the fire than Richardson. (Doc. # 155 at 4.)   It is not the role of the Court under Daubert to rule in favor of one expert's opinion over another's opinion.   Simply stated, the role of a district court under Daubert is to serve as the "gatekeeper" and admit only "scientific knowledge" regarding the matters to be addressed.  Daubert, 509 U.S. at 590.  Based on Richard's extensive experience and use of proven scientific investigative procedures, the Court qualifies Richardson as an expert as to the cause and origin of the instant fire.

In addition, Plaintiffs appear to question the reliability of Richardson's finding that the destruction of the van undermines the cause and origin analysis in this case.   As aptly stated by

--------

[4] At one point in their motion, Plaintiffs assert that Richardson is not familiar with N.F.P.A. guidelines (Doc. # 123 at 3).   Thereafter, Plaintiffs complain that Richardson applies the N.F.P.A. guidelines too "strictly." (Doc. # 123 at 17).  It is not disputed that Richardson's methodology is rooted in the widely accepted standards and guidelines set forth by the N.F.P.A., and Plaintiffs' challenge of Richardson's reliability on this point is thus unavailing.

Defendant in response to this contention, "To prevent Richardson from so testifying could effectively reward and sanction Plaintiffs' destruction of evidence and eliminate Defendant Flying J's remaining ability to defend itself in this case." (Doc. # 148 at 7). Defendant continues, "Plaintiffs' destruction of the van must not be permitted to serve the dual purpose of rendering the main and most vital piece of evidence unavailable and preventing Defendant from presenting cause and origin expert testimony that the absence of the destroyed evidence renders it impossible to determine the probable source of ignition." (Doc. # 148 at 8).

Plaintiffs' challenges regarding the reliability of Richardson's testimony are thus without merit.

C.   **Richardson's Ability to Assist the Trier of Fact**

The final prong of the <u>Daubert</u> analysis requires this Court to determine whether the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Expert testimony should be "the kind that enlightens and informs lay persons without expertise in a specialized field." <u>United States v. Burchfield</u>, 719 F.2d 356, 357 (11th Cir. 1983). As the court noted in <u>Abramson v. Walt Disney World</u>, 370 F. Supp. 2d 1221 (M.D. Fla. 2005), the Eleventh Circuit "follows the generally accepted rule that expert testimony is properly excluded when it is not needed to clarify facts and issues of common

understanding   which   jurors   are   able   to   comprehend   for themselves."(internal citations omitted).

In Abramson, the plaintiff tripped on an obstruction in her walking path at Walt Disney World's Animal Kingdom theme park. Id. at 1222. She sued Disney for negligence, and proffered expert testimony regarding the safety of Disney's grounds. Id. The expert's opinion was apparently based on his review of numerous codes and regulations that spoke in general terms about the desirability of unobstructed walkways. Id. at 1224-25. In determining whether the Disney facility was safe, he did not apply any particular methodology to arrive at his opinion, but rather "merely looked at the facility, noted the elevation and concluded that it protruded into the walkway, and was therefore necessarily an obstruction, which is per se unsafe." Id.

As to the reliability of the testimony, the court concluded that there was no theory to evaluate, "unless it is the underlying assumption that anything that protrudes into an accessway is an obstruction and all obstructions are unsafe." Id. Ultimately, the court noted that the expert's theory had not been published or subjected to peer review and "is too general a statement to be deemed reliable, in any event." Id.

On the issue of whether the expert's testimony would aid the trier of fact, the court determined, that the "matters sought to be testified to . . . . [were] well within the jury's ken." Id. at

1226 (citing <u>Hibiscus Assoc. Ltd. v. Bd. of Trustees of Policemen and Firemen Retirement Sys. of City of Detroit</u>, 50 F.3d 908, 917 (11th Cir. 1995)).

Thus, it is generally true that expert testimony is unnecessary if the matters are commonly known and observable, or when ordinary experience would render the jury competent to decide the issue. <u>Abramson</u>, 370 F. Supp. 2d at 1225-1266. <u>See also</u> <u>Scott v. Sears, Roebuck & Co.</u>, 789 F.2d 1052, 1055 (4th Cir. 1986)(evidence that women wearing high-heeled shoes avoid waking on grates was "common knowledge and common sense" and admission of expert testimony on this issue was erroneous); <u>Alzubaidi v. Wal-Mart Stores, Inc.</u>, Civil Action No. 90-1891, 1991 U.S. Dist. LEXIS 7693, *1 (E.D. La. 1991)("When the matter to be determined is within the common knowledge of the jury and the ordinary experience will render a jury competent to decide the issue, as in the typical 'slip and fall in a store' case, then the expert testimony should not be admitted.").

This case involves Plaintiff Lise St. Cyr falling down on Defendant's property, but this case is no simple "slip and fall." Plaintiffs allege that her fall was the result of an explosion at Defendant's gas station involving Plaintiffs' vehicle.  It is without question that the jury will require an expert in order to understand the evidence in this case.  The cause and origin of fires as well as other scientific and technical matters that will

arise in this case are neither matters of common sense nor common knowledge.  Accordingly, the Court determines that Richardson's testimony will assist the trier of fact in this case and meets the third Daubert prong.

## III. Motion in Limine to Limit Richardson's Testimony

In addition to requesting an order barring Richardson from offering expert testimony, Plaintiffs seek an order prohibiting Richardson from commenting on "rules, regulations or 'compliance issues' or to attribute responsibility, fault, or liability in this case" (Doc. # 123 at 22).[5]  Plaintiffs basically assert that Richardson's testimony about liability in this case is a legal opinion, rather than a factual opinion, and as such, is impermissible.

It is true that Federal Rule of Evidence 704 states that testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.  However, Rule 704 was not intended to allow experts to offer opinions embodying legal conclusions.  See Advisory Committee Notes to Rule 704 Fed. R. Evid.

---

[5] Defendant noted in a prior submission, "The focus of Mr. Richardson's testimony will involve the details surrounding the nature of the fire itself, including opinions concerning its cause and origin and its effect on liability in this case.  In summary, Mr. Richardson will testify that the fire was not caused by the negligence of Flying J or its employees, but rather due to Plaintiffs' (20) twenty year old van." (Doc. # 71 at 4).

While the Court qualifies Richardson as an expert as to the cause and origin of the fire at the heart of this case, the Court cannot allow Richardson to make legal conclusions regarding the St. Cyrs' duty to maintain their own propane system or other legal issues. (Doc. # 148 at 8.)  <u>See, e.g.</u> <u>Montgomery v. Aetna Casualty & Sur. Co.</u>, 898 F.2d 1537, 1541 (11th Cir. 1990) (allowing an expert to testify concerning the scope of an insurance company's duty under policy was an error because "the Court must be the jury's only source of law").  The Court holds that it would be improper, under Rule 704, to allow Richardson to testify regarding the Plaintiffs' "responsibility" and his testimony on all legal matters is restricted.

## IV. <u>Conclusion</u>

Defendant has met its burden under <u>Daubert</u> and Rule 702 to qualify Richardson as an expert witness as to the cause and origin of the instant fire.  Because the Court finds that Richardson is so qualified, a <u>Daubert</u> hearing is unnecessary.  However, while Richardson is qualified to testify regarding the cause and origin of the fire, the Court cannot allow Richardson to state a legal conclusion as to Plaintiffs' responsibility to maintain their propane system.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED** that:

(1)   Plaintiffs' Motion to Strike Ladon Richardson Pursuant to Daubert and/or Motion in Limine Limiting the Scope of Mr. Richardson's Testimony (Doc. # 123) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(A)   The Court declines to strike Richardson as an expert witness.   The court qualifies Richardson as an expert witness as to the cause and origin of the fire in question in this case.   The Court declines to hold a Daubert hearing.

(B)   Richardson is prohibited from offering legal opinions regarding Plaintiffs' legal duties, as this Court is the jury's only source of law.   Richardson is free to offer factual opinions.

**DONE** and **ORDERED** in chambers, in Jacksonville, Florida, this 29th day of June 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel of Record